UNITED STATES OF AMERICA,　　　　)
　　　　　Respondent,　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　)　　　No:  2:06-CR-10
　　　　　　　　　　　　　　　　)　　　No:  2:11-CV-312
THEODORE A. HOGAN,　　　　　　)
　　　　　Petitioner.　　　　　　　)

MEMORANDUM OPINION

This matter is before the Court on the motion of Theodore A. Hogan ("petitioner" or "Hogan") To Vacate, Set Aside Or Correct Sentence Under 28 U.S.C § 2255, [Doc. 113].[1]  The United States has responded in opposition, [Doc. 121], and the petitioner has replied, [Doc. 127].  The matter is now ripe for disposition.  The Court has determined that the files and records in the case conclusively establish that the petitioner is not entitled to relief under § 2255 and, therefore, no evidentiary hearing is necessary.  For the reasons which follow, petitioner's § 2255 motion lacks merit and will be DENIED.[2]

I.　　　**Procedural and Factual Background**

On March 14, 2006, the federal grand jury returned a four count indictment charging Hogan in Counts One, Two and Three with distribution of heroin and in Count Four with possession with intent to distribute dihydrocodeine, [Doc. 3].  On January 8, 2008, a superseding indictment was returned by the grand jury adding a fourth count of distribution of heroin and renumbering the original Count Four as Count Five, [Doc. 10].  On February 7, 2008, the United

_____

[1]  All references are to docket entries in case No. 2:06-CR-10.

[2]  Petitioner has also filed a motion to expedite consideration of his petitioner under 28 U.S.C. § 2255, [Doc. 129]. The Clerk is directed to terminate the motion as MOOT.

1

States filed an information pursuant to 21 U.S.C. § 851(a)(1) giving notice of its intention to seek increased punishment by reason of two prior felony drug convictions, i.e., on November 14, 1994, in the United States District Court for the Eastern District of Tennessee, in case number 2:94-CR-46, of distribution of LSD, and on July 14, 1995, in the Criminal Court of Washington County, Tennessee, in case number 21078, of possession of hashish, [Doc. 21].   After extensive motion practice in the case, the case proceeded to a jury trial on June 10-11, 2008.  The jury returned its verdict on June 11, 2008, and Hogan was convicted on Counts One through Four, [Doc. 70].  A presentence investigation report ("PSR") was completed.  The probation office determined that Hogan was a career offender based on his two prior felony drug convictions, resulting in an advisory guidelines range of 262 to 327 months of imprisonment.

A sentencing hearing was held on November 17, 2008 and the Court imposed a sentence of 262 months, the bottom of the guidelines range.  Judgment was entered on December 3, 2008, [Doc. 83], and Hogan's notice of appeal was filed on December 4, 2008, [Doc. 84].   On November 4, 2010, the Sixth Circuit Court of Appeals affirmed Hogan's convictions and sentence, [Doc. 102].  Hogan then timely filed the instant motion to vacate under 28 U.S.C. § 2255 on October 17, 2011.  The following facts are taken from the opinion of the Sixth Circuit Court of Appeals:

> In November 2004 First Judicial District Drug Task Force agents Chris Pierce and Eric Borchgrevink outfitted confidential informant Roger Greenwell with money and a listening device and sent him to a residence in Carter County, Tennessee to purchase drugs from Kim Probst. Probst was not home when Greenwell arrived at her house, but as Greenwell left Probst's property Defendant approached him and offered to sell him two bags of heroin. Providing Greenwell with his phone number, Defendant added that in the future he could sell Greenwell a bundle of heroin for $300. Greenwell returned to the agents, who searched Greenwell and took the heroin Greenwell had just purchased from Defendant.

Agents arranged two additional transactions between Defendant and Greenwell. Before each transaction, agents searched Greenwell, outfitted him with a listening device, and provided him with recorded currency. After each transaction, agents searched Greenwell, and recovered the heroin.

During the November 5, 2004 transaction the agents surveilling the buy observed a blue Ford Taurus registered to Defendant pull up alongside Greenwell's vehicle. The agents watched and listened as Defendant sold Greenwell a bundle of heroin. After the transaction's completion, the agents pulled into the gas station to get a closer look at Defendant. Agent Pierce made mental note of Defendant's appearance and the fact that he was wearing a blue Adidas jacket.

The final transaction on November 10, 2004 was at Greenwell's apartment. The primary purpose of this transaction was to arrest Defendant while he possessed the recorded currency. The transaction's secondary purpose was to arrest Greenwell for Greenwell's unrelated criminal activity based on information provided to agents from another informant, known as "Slim."

The agents observed Defendant's blue Ford Taurus parked at Greenwell's apartment complex. They also observed Greenwell and Defendant enter the complex. Agent Pierce arrested Defendant as he was leaving Greenwell's apartment upon the transaction's completion. Agents searched Defendant's pockets incident to his arrest, and found eight bags of heroin, fourteen Lortab tablets, and $300 bearing the same serial numbers logged by the agents. Agents' subsequent search of Defendant's car revealed a large knife, several sandwich baggies fastened with a rubber band, three additional baggies containing heroin residue, and a blue Adidas jacket.

Once Defendant was in custody, Agent Borchgrevink entered Greenwell's apartment and recovered the heroin Greenwell purchased from Defendant, removed the listening device from Greenwell's person, and arrested Greenwell on the unrelated charges.

## II.    Standard of Review

This Court must vacate and set aside petitioner's  sentence if it finds that "the judgment

was rendered without jurisdiction, or that the sentence imposed was not authorized by law or

otherwise open to collateral attack, or that there has been such a denial or infringement of the

constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996). To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a

petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland* 466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F. 2d 1073, 1081 (3rd Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in

light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

**III.     Analysis and Discussion**

Hogan makes ten allegations of ineffective assistance of trial counsel which he states as follows:

    a.  <u>Pre-Trial</u>

      1.  Failure to seek dismissal of the indictment on grounds of selective prosecution

      2.  Failure to seek suppression of tape recorded evidence

3. Failure to adequately argue and support opposition to government's notice of intent to use 404(b) evidence.

b. Trial

1. Failure to Object to, and Challenge, the Admissibility of Government Exhibit #1 (Audio Recording)

2. Failure to Object to, and Challenge, the Admissibility of Government Exhibit # 4 (Audio Recording)

3. Failure To Object And Move For Mistrial Or, Exclusion Of Audio Recordings, as Sanction for Prosecutor's Improper and Prejudicial Leading Question Regarding Evidence Specifically Excluded by the Court

4. Failure To Produce Entire Audio Recording in Support of Defense Theory, and, to Rehabilitate its Witness

5. Failure to Renew Motion for Judgment of Acquittal Following the Submission of Defendant's Proof

c. Sentencing

1. Failure to Argue that Hogan's Career Offender Designation Exaggerated the Seriousness of His Criminal History

d. Cumulative Error

[Doc. 113 at i and ii]. Hogan raises one claim of ineffective assistance of counsel on appeal:

1. Failure to appeal district court's ruling regarding motion to exclude evidence of prior drug conviction

The Court will take up each of these claims in turn.

**A.     Selective Prosecution/Issue a. 1.**

Hogan faults counsel for failing to file a motion to dismiss the indictment on the ground of selective prosecution. He claims that he was singled out by federal prosecutors for federal prosecution, even though his was a "common" drug case involving a small amount of heroin like "hundreds" of others prosecuted in state courts, because he was a "hippie with long hair" who

practiced a religious belief in mysticism. [Doc. 113 at 12-13]. He asserts that hippies are a protected class and his prosecution "was pure discrimination; conduct that cannot withstand constitutional scrutiny." [*Id.* at 13]. Hogan claims that, because of his discriminatory prosecution in federal court, he faced "decades of incarceration" rather than the fraction of that time he would have faced if prosecuted in state court.

The Sixth Circuit has succinctly stated the standard for a petitioner asserting selective prosecution:

> . . . [The petitioner] bears the heavy burden of establishing, *at least prima facie*, (1) that while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, *and* (2) that the government's discriminatory selection of him has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent the exercise of his constitutional rights.

*United States v. Bustamante*, 805 F.2d 201, 202 (6th Cir. 1986) (quoting *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974)). "A mere allegation that the exercise of First Amendment rights led to the prosecution does not mandate a full evidentiary hearing." *Bustamante*, 805 F.2d at 202. Rather, "[a] hearing is necessary only when the motion alleges sufficient *facts* to take the question past the frivolous state and raises a reasonable doubt as to the prosecutor's purpose." *Id*. (quoting *United States v. Larson*, 612 F.2d 1301, 1304-05 (8th Cir. 1980)).

To make a *prima facie* case of selective prosecution, Hogan is required to show (1) that others who engaged in the same conduct were not prosecuted, and (2) the government singled out the defendant for prosecution based upon "such impermissible considerations as race, religion, or the desire to prevent the exercise of his constitutional rights." *United States v. Perry*, 172 F.3d 50 (6th Cir. 1998) (citing and quoting *Bustamante*, 805 F.2d at 202).

Hogan fails to make a *prima facie* showing on either part of the required test. First, he does not show that others engaged in the same conduct were not prosecuted; he simply argues, in a conclusory fashion, that he was one of hundreds of others similarly situated "with absolutely no distinguishing circumstances to warrant special attention, or, to attract the federal government." The only factual allegation Hogan makes is that DEA Agent Bishop "shopped" the case to all five AUSAs in the Greeneville division before the United States would "adopt" the case for prosecution.[3] These allegations fail to meet the required showing necessary for a *prima facie* case of selective prosecution. Initially, the Court notices that the United States attorney in this judicial district has in fact prosecuted many drug cases involving small quantities of drugs over which the undersigned has presided over the last decade, especially where the offender had prior felony drug convictions, as was the case with Hogan, and Hogan's conclusory statements to the contrary are nothing more than speculative. In addition, Hogan mischaracterizes Agent Bishop's trial testimony. Agent Bishop only testified that several different prosecutors had been assigned to the case since she brought it to the United States Attorney's office in May, 2006, and that she thought she had worked with "them all."[4]

Second, Hogan's allegation that he was singled out for the impermissible reason that he was a "hippie" and because of his "religious belief in mysticism" is simply conclusory and Hogan offers no facts to support the allegation.[5] He simply points to testimony by Agent Pierce that Hogan was a hippie with long hair and "stood out." Even if that is an accurate statement of

---

[3]  Two of the AUSAs mentioned by Agent Bishop no longer worked for the United States Attorney's office when the case was tried.

[4]  The Court notes that petitioner faults counsel for not filing *a pre-trial* motion to dismiss the indictment on grounds of selective prosecution. Agent Bishop's testimony, even if not mischaracterized by Hogan, would not have been available to counsel before trial.

[5]  The Court accepts, for the sake of argument, that "hippie" is somehow a protected class and that a religious belief in mysticism is entitled to constitutional protection, assumptions that are far from certain.

Agent Pierce's testimony, the testimony falls far short of suggesting that Hogan was singled out for prosecution for his religious beliefs or other impermissible consideration.

Hogan's selective prosecution claims lacks merit.

**B.     Suppression of Tape Recorded Evidence/Claim a. 2.**

Hogan claims counsel was ineffective for failing to seek suppression of the tape recordings offered into evidence by the government.  He argues that the recordings were subject to suppression pursuant to 18 U.S.C. §§ 2511(2)(d) and 2515 because Greenwell, the confidential informant, "used his position as an informant to commit his own crimes."  Hogan further argues that Greenwell's consent to the recordings was "invalidated by his criminal conduct," i.e., using money supplied by DTF agents to purchase heroin for his own use and by stealing drugs from the agents.

Section 2511(2)(d) provides:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State or for the purpose of committing any other injurious act.

18 U.S.C. § 2511(2)(d).  Section 2515 makes evidence obtained in violation of § 2511(2)(d) subject to suppression.  18 U.S.C. § 2515.  Hogan argues that the recordings were subject to suppression here because they were intercepted "for the purpose of committing any criminal act."

To merit suppression under §§ 2511(2)(d) and 2515, a defendant must prove by a preponderance of the evidence that the recording was made for an unlawful purpose.  *United States v. Zarnes*, 33 F.3d 1454, 1469 (7th Cir. 1994).  Contrary to Hogan's claim, however, it is

"the interception itself . . . that must be for the purpose of committing the criminal or tortious act." *United States v. Truglio*, 731 F.2d 1123 (4th Cir. 1984), overruled on other grounds by *United States v. Burgos*, 94 F.3d 849 (4th Cir. 1996) (*en banc*) (citing *Merrideth v. Garvin*, 446 F.2d 794, 799 (8th Cir. 1971); *United States v. Phillips*, 540 F.2d 319, 325 (8th Cir. 1976), *cert. denied*, 429 U.S. 1000 (1996); *Moore v. Teflon Comm. Corp.*, 589 F.2d 959, 965 (9th Cir. 1978)). Thus, the fact that Greenwell may have committed a criminal offense during the course of the conversation recorded does not establish that the interception itself was for a criminal purpose, such as blackmailing, threatening or embarrassing the other party. *See* 114 Cong. Rec. 14694 (May 28, 1968), cited in *United States v. Phillips, supra.*

Because Hogan cannot show that the interception (recording) itself was for the purpose of committing a criminal act, § 2511's exception does not apply. Therefore, the recording was admissible because Greenwell, a party to the conversation, consented to the interception. This claim therefore lacks merit.

### C.      Rule 404(b) Evidence/Claim  a. 3.

On April 10, 2008, the United States filed a motion pursuant to Federal Rule of Evidence 404(b) to use Hogan's prior Maryland conviction for conspiracy to possess with intent to distribute heroin. [Doc. 40]. The government offered evidence of the November, 1999 Maryland conviction, in case No. 24799, where Hogan was convicted of a felony offense of conspiracy to distribute heroin to show intent, knowledge, and absence of mistake or accident, all proper 404(b) purposes. Hogan's counsel filed a motion to exclude the 404(b) evidence, [Doc. 41]. After a hearing, the Court filed a written order denying the motion, finding that the evidence was probative on the issue of intent and "near enough in time to the present charges where the probative value is not diminished." [Doc. 62].

Hogan does not claim counsel was ineffective for failing to file a motion to exclude the 404(b) evidence; indeed, he could not. Rather, he claims that counsel was ineffective for failing "to adequately argue and support" the motion. More specifically, Hogan faults counsel for failing to argue that the prior Maryland "conviction was [not] part of the same scheme or involved a similar *modus operandi* as Hogan's present offense." Hogan relies on *United States v. Bell*, 516 F.3d 432 (6th Cir. 2008), decided just three months before the hearing on Hogan's motion on May 29, 2008, and argues that if counsel had only called the decision to the Court's attention, the Court would have excluded evidence of the prior conviction.

In *Bell*, a split panel of the Sixth Circuit, while acknowledging that the Sixth Circuit had "repeatedly recognized that prior drug distribution evidence is admissible to show intent to distribute, *Bell*, 516 F.3d at 443 (quoting *United States v. Ayoub*, 498 F.2d 532, 548 (6th Cir. 1997)), however, went further and held that such evidence was admissible only if "the prior drug distributions were part of the same scheme or involved a similar *modus operandi* as the present offense." *Id*. at 443-44. Hogan correctly asserts that the government did not allege, and the Court did not find, that his prior drug conviction was part of the same scheme or involved a similar *modus operandi* as the present offense. Hogan incorrectly asserts, however, that the Court was unaware of the decision or that it would have changed the Court's ruling.

The holding in *Bell* was an anomaly and is inconsistent with the holdings of numerous other prior Sixth Circuit opinions. *See United States v. Jenkins*, 345 F.3d 928, 938 (6th Cir. 2003) (collecting cases). In *United States v. Hardy*, the Sixth Circuit addressed the very argument raised by Hogan here and rejected it, noting that the Sixth Circuit had "recently noted . . . that *Bell*'s holding conflicts with prior circuit precedent, and is therefore not controlling. 2011 WL 3204739 (6th Cir. 2011) (citing *United States v. DeMarcus Hardy* No. 08-5991, 2011 U.S. App. LEXIS

10155 at * 12, * 35, 2011 WL 1885847 (6th Cir. May 19, 2011)).  Given this uncertainty, Hogan cannot demonstrate any real probability that this Court would have deemed *Bell* controlling on the issue he raises.  In addition, *Bell*'s holding was in fact called to the attention of the Court, not by petitioner's counsel but by the government, and was discussed at length by the government in its response, [Doc. 55].  After thorough consideration, the Court admitted the 404(b) evidence at issue here, implicitly rejecting the *Bell* court's holding.  This claim lacks merit.

D.      **Failure to Object to Government Exhibits Nos. 1 and 4 (Audio Recordings)/ Claims b. 1. and 2.**

Government Exhibits 1 and 4 were audio recordings of the November 3 and 5, 2004 transactions between Greenwell and Hogan.  Federal Rule of Evidence 901(a) requires "authentication or identification as a condition precedent to admissibility" of evidence. Identification of a voice on a tape recording can be authenticated "by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker."  Fed. R. Evid. 901(b)(5).  The Rule, by way of illustration, states that the testimony of a witness that the item is what it purports to be is sufficient authentication.  Fed. R. Evid. 901(b)(1).  The admission of tape recordings is within the sound discretion of the trial court.  *United States v. Sivils*, 960 F.2d 587, 597 (6th Cir. 1992).

Hogan cites *United States v. Eberhart*, 467 F.3d 659 (7th Cir. 2006) and argues that the government did not establish a chain of custody nor did it offer a witness who could identify Hogan's voice as a speaker on the tape recording.  Hogan claims that, had counsel objected, the Court would have refused to admit the recording.  This is the most troubling of the issues raised by petitioner.  Indeed, during a discussion out of the presence of the jury, the Court expressed concern that no foundation had been laid for the admission of the tape recordings through identification of the voices on the recordings.

The government offered the testimony of Agent Pierce to authenticate the audio recordings. It is correct, as Hogan suggests, that Agent Pierce did not testify that he could identify Hogan's voice on the recordings based on prior hearing of the petitioner's voice. It is also accurate, as Hogan also claims, that *Eberhart* holds that an audio recording **may** be authenticated "by establishing the chain of custody or by offering the testimony of an eyewitness that the recording accurately reflects the conversation he or she witnessed." *Eberhart*, 467 F.3d at 667.

Agent Pierce did testify, however, that the audio tapes were accurate recordings of the conversations he had listened to through the listening device worn by Greenwell on November 3 and 5, 2004. Agent Pierce also testified to the procedure used to place the listening device on Greenwell and the procedures used when he returned from the transaction. That testimony was sufficient to authenticate the recordings for the purpose of Rule 901. Although it is clear that an audio recording may be authenticated in the manner advocated by Hogan, nothing in Rule 901 suggests that it is the exclusive manner. In fact, the recording at issue in *Eberhart* was found by the Seventh Circuit to be properly authenticated through the testimony of an officer who testified that he listened to one party's end of the conversation as it occurred and that the recording accurately reflected what was said. *Id.* at 667-68.

Also, the Sixth Circuit has considered a situation much like the one at issue here. In *United States v. Sexton*, 119 Fed. App'x 735, 2005 WL 65514 (6th Cir. 2005), tapes were made by a confidential informant during controlled buys from two of the co-conspirators. The conversations were transmitted real time through a hidden transmitter to police officers, who monitored the confidential informant as he spoke. The confidential informant did not testify at trial because it had been discovered that he lied to police. The government introduced the

14

recordings, admitted over the objection of defendants, through the testimony of the participating police officers about the procedures used when the confidential informant was outfitted with the transmitter and recorder during the controlled buys.

The Sixth Circuit held that the tapes were admissible and that "[i]t is not necessary for a participant of the conversation to testify to the authenticity of the recording so long as other indicia of accuracy and reliability are established." 2005 WL 65514 at ** 3. The confidential informant in *Sexton*, as here, wore a recording device and the conversation was recorded contemporaneously with the controlled buys. The recording device was removed from the confidential informant immediately after the buys and the recordings were verified as duplicates of the conversation. The Sixth Circuit found the testimony adequate to satisfy Rule 901. Hogan's voice was adequately identified as well. As the Sixth Circuit noted in its opinion in the instant case, Agent Pierce, although he had not heard petitioner's voice before the recordings were made had "had an opportunity to familiarize himself with [petitioner's] voice after[wards]." *United States v. Hogan*, 402 Fed. App'x 54, 2010 WL 4553458 (C.A. 6 (Tenn.)). In short, despite the Court's misgivings stated during trial, the recordings were properly authenticated and admitted at trial.

### E. Failure to Object and/or Seek Mistrial/Claim b.3

Prior to the trial, United States Magistrate Judge Dennis H. Inman ruled that the government would not be allowed to provide transcripts of the recordings as an aid to the jury. Upon reconsideration, however, Judge Inman allowed the government to use transcripts of certain portions of the recordings.[6] One portion of the transcript of the November 5, 2004 transaction reviewed but disallowed by Judge Inman identifies Hogan as saying "I'm gonna fill up on gas."

---

[6] By order entered on April 8, 2008, the Magistrate Judge denied the defendant's motion to preclude the United States from introducing into evidence the audio recordings at issue. [Doc. 38].

During direct examination of Agent Pierce, Pierce was asked whether the transaction involved "some conversation about someone going to fill up on gas?" Hogan claims the question was improper and highly prejudicial since Judge Inman had excluded that portion of the transcript and that counsel had a duty to object. If she had done so, Hogan believes the objection would have been sustained. The testimony was highly prejudicial according to Hogan because it was the only way the government could link Hogan, who was later seen by Pierce at the gas station, to the voice on the recording.

There is an obvious flaw in Hogan's argument. Hogan assumes that the government's questioning of Agent Pierce violated Judge Inman's order; it did not. The order prohibited use of the transcript offered by the government with respect to the portion of the recording Hogan now objects to. The order did not prohibit introduction of the tape recording itself[7] nor did it prohibit the government from questioning Pierce about what **_he_** heard over the transmitter. The prosecutor's questions, therefore, were not about evidence specifically excluded by the Court. It was a portion of the transcript as an aid to the jury which was excluded and the Assistant United States Attorney's questions did not relate to the transcript.

There is a second important reason why Hogan's argument fails as to this claim. Even if the government attorney's question was objectionable as leading, such an objection would simply have called the jury's attention to the question and the Court would likely have allowed the government attorney to rephrase the question. Counsel's decision to cross-examine Agent Pierce about the matter rather than object to a leading question is certainly not ineffective assistance of counsel. In fact, the record establishes that counsel made very effective use of her cross-examination to challenge Agent Pierce's credibility. Counsel very pointedly asked Pierce about

---

[7] Hogan does not claim that the recording itself was inadmissible and, in fact, the recoding, including the portion relevant to this issue, was heard by the jury.

the contents of the recording: "We didn't hear anything like that on the tape, did we?" [Doc. 92 at 100]. Counsel very effectively stressed that portions of the recording were unintelligible and that the jury did not hear the entire recording. Counsel effectively argued that it was the jury's job to determine what was said on the recording, underscoring the Court's limiting instruction to the jury about the use of transcripts.

This issue is without merit.

### F. Failure of Counsel to Introduce Complete Recording/Claim b. 4.

After the government rested its case in chief, the defendant called Roger Greenwell, the confidential informant, as a witness. Greenwell testified that Hogan was not the source of the heroin provided to DTF agents but rather it was provided by Mark Hale, Greenwell's neighbor, who was present along with Greenwell and Hogan during the transaction. After the government's cross-examination, which had called Greenwell's credibility into question, petitioner's counsel was offered the opportunity by the Court to redirect the witness. She declined to do so. Hogan claims counsel should have introduced the entire tape recording which, according to Hogan, showed three people were present, to bolster Greenwell's testimony and rehabilitate him before the jury.[8] The specific portion of the recording petitioner now claims should have been used for this purpose is a portion where Greenwell is heard saying: "You guys seen Kim?" Hogan argues that the use of the plural by Greenwell shows that three people were present.

While it is true that the recording arguably supports Greenwell on this minor point, i.e., that three persons were present at the drug transaction, it would not, however, tend to prove that Hall was present and it clearly does not absolve Hogan of the crime. In light of the fact that it was Hogan who answered Greenwell's question, counsel's decision not to introduce this portion of the

---

[8] To the extent petitioner's motion can be interpreted to claim counsel's decision not to ask questions of Greenwell on redirect was ineffective, he has not identified any questions he claims should have been asked.

recording is a reasonable one to avoid highlighting petitioner's presence and involvement. Even if counsel was somehow ineffective for not introducing the additional portion of the tape recording, petitioner has not shown how this insignificant evidence, which did not establish that Hall was the source of the drugs or absolve Hogan in any way, would have changed the outcome of the trial. For these reasons, this claim also lack merit.

### G. Failure of Counsel to Renew Rule 29 Motion at Conclusion of all Proof/Claim b. 5

Petitioner acknowledges that the Court correctly denied his motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 at the conclusion of the government's proof. Counsel did not renew the motion, however, at the conclusion of all the proof after the testimony of Greenwell. The failure of counsel to do so constituted a waiver of the right to challenge the sufficiency of the evidence on appeal. Hogan claims that there is a reasonable probability that, had the motion been made, it would have been granted by the Court, after hearing Greenwell's testimony.[9] Hogan notes that the Court had been skeptical of the government's proof and that is true, at least in part. The Court's skepticism, however, was limited to Count One, and indicated a willingness to reconsider the matter after a possible conviction.

The Court will assume that counsel was ineffective in not renewing the Rule 29 motion; however, even so, Hogan cannot show the necessary prejudice because he cannot show a reasonable probability that the Rule 29 motion would have been granted or that he could have prevailed on appeal on his sufficiency of the evidence challenge. Hogan attempts to do so by arguing the credibility of the witnesses, especially Agent Pierce and Greenwell, and the weight to be given to the evidence. In evaluating a Rule 29 motion, however, the Court does not "weigh

---

[9] Hogan attacks the credibility of Pierce, noting that the Court expressed the opinion, out of the presence of the jury, that Pierce's testimony was at times contradictory and inconsistent. On the other hand, he practically assumes the credibility of Greenwell, a witness the Court found not particularly credible. In any event, it was the job of the jury to sort all of this out and determine the credibility of witnesses.

credibility so long as it is not facially insubstantial or incredible." *United States v. Welch*, 97 F.3d 142, 151 (6ᵗʰ Cir. 1996); *United States v. Abdullah*, 162 F.3d 398, 903 (6ᵗʰ Cir. 1998). To the contrary, "credibility of witnesses is exclusively the province of the jury." *United States v. Bond*, 22 F.3d 662, 667 (6ᵗʰ Cir. 1994).

In this case, there was sufficient evidence which, if believed by the jury, would have sustained the jury's verdict. A Rule 29 motion will be overruled if "viewing the evidence in the light most favorable to the prosecution, any rational trier of facts could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Even though evidence may be "meager," testimony may be sufficient to establish the elements of the offense "beyond a reasonable doubt." *United States v. Ward*, 190 F.3d 483, 487-88 (6ᵗʰ Cir. 1999, *cert. denied*, 528 U.S. 1118 (2000). In assessing a Rule 29 motion, circumstantial evidence and direct evidence are accorded the same weight. *United States v. Sherlin*, 67 F.3d 1208, 1214 (6ᵗʰ Cir. 1995), *cert denied*, 516 U.S. 1082 (1996). There was clearly sufficient direct and circumstantial evidence offered by the government in this case to establish the elements of the offense beyond a reasonable doubt. The claim lacks merit.

Hogan does make one other argument that bears some analysis. He specifically argues that the government failed to prove <u>intent</u> to distribute on November 3 and 5 (Counts One and Two). He cites Greenwell's testimony that Hogan was not the source of the heroine, that no fingerprints were taken, and that no foundation was laid for the introduction of the audio recordings. He also argues there was no evidence to show distribution. As shown in the summary of the trial testimony above, there was significant circumstantial evidence of both distribution and intent to distribute. The audio recordings, the testimony of the agents, the prior Maryland conviction, which the Court determined was probative of intent, and the physical

evidence found in the search of petitioner's car all provided sufficient evidence to sustain the convictions.

### H. Failure to Argue at Sentencing that Career Offender Guideline Exaggerated the Seriousness of Petitioner's Criminal History/Claim c. 1

Hogan was a career offender under the Sentencing Guidelines, resulting in a guidelines range of 262-327 months. Section 4A1.3 of the Sentencing Guidelines allows a downward departure "[i]f reliable information indicates that the defendant's criminal history category substantially over represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes," USSG § 4A1.3(b)(1). The guidelines limit the downward departure under this subsection for a career offender to one criminal history category. USSG § 3A1.1(b)(3)(A).

Hogan argues that counsel was ineffective by failing to seek a downward departure on the grounds that his criminal history substantially over represents the seriousness of his criminal history. Petitioner argues that the two prior convictions which triggered his career offender classification occurred in 1994 and 1997 and were 14 and 9 years old respectively at the time of sentencing. Hogan admits that he has a substantial criminal record but argues that these two convictions, one involving four grams of LSD and the other four grams of heroin, did not justify a 900 percent increase in his guidelines range. To be sure, there are cases which recognize that prior offenses involving small quantities of drugs and the age of prior convictions <u>may</u> justify a downward departure. *See United States v. Smith*, 278 F.3d 605, 610 (6th Cir. 2002); *United States v. Fletcher*, 15 F.3d 553, 556-57 (6th Cir. 1997), overruled on other grounds by *Koon v. United States*, 518 U.S. 81 (1996).

Were the two prior felony drug convictions the only criminal history, Hogan would have a much stronger argument. But he also has prior convictions for first-degree burglary, aggravated

assault, resisting arrest, and drug possession, as well as multiple violations of parole and probation for absconding and use of controlled substances. His criminal history spans 20 years and suggests a very high risk of recidivism. His criminal history resulted in 11 criminal history points and he was a criminal history category of V under the guidelines even before application of the career offender guideline. In addition, he received no criminal history points for a number of prior convictions, including a 1994 drug offense. This Court agrees with the government that in light of petitioner's lengthy criminal history and felony drug offenses, counsel was not ineffective by not requesting a downward departure. *See United States v. Vasquez-Duarte*, 59 Fed. App'x 625, 628-29 (6th Cir. 2003) (counsel not ineffective for not seeking a downward departure based on § 4A1.3 where the defendant had prior convictions for serious offenses, had 11 criminal history points, and demonstrated "significant risk of recidivism.").

The Court also agrees with the government that petitioner cannot meet the prejudice prong of the *Strickland* test, even if he could show that counsel was ineffective. As the government points out, the Court specifically addressed the career offender guideline during sentencing and noted that it often disagreed with the guidelines range under the career offender guideline. In this case, however, the Court rejected any claim that the guidelines were too harsh, stating that petitioner's case "illustrates as well as any why the Congress has done what its done with repeat drug offenders." [Doc. 95 at 10]. Given the clear indication from the Court that the guideline range was appropriate in this case and the Court's finding that "[t]he only way to protect the public is to impose a Guidelines sentence," [*id*. at 10-11], the petitioner cannot show any likelihood that he would have received a lesser sentence even if a motion for downward departure pursuant to § 4A1.3 had been filed.

This claim lacks merit.

## I. Cumulative Error/Claim d.

Petitioner asserts that, if no single error is substantial enough to warrant relief, counsel's accumulation of errors warrants relief. Assuming that cumulative error can even provide a basis for relief in a § 2255 proceeding, *see Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2006), petitioner has established no cumulative error. This claim is without merit.

## J. Ineffective Assistance of Appellate Counsel

Hogan asserts that appellate counsel appointed by the Sixth Circuit chose to appeal to the Sixth Circuit[10] three "essentially meritless" issues, while leaving his strongest claim, that of the admission of the prior Maryland conviction, unraised. As set forth above, however, in § III,C, the Maryland conviction was admissible for the reasons stated there. Appellate counsel was not ineffective in failing to raise a meritless issue.

## IV. Conclusion

For the reasons set forth above, the Court holds petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States. Accordingly, his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be DENIED and his motion DISMISSED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of

---

[10] Three issues were raised on appeal: First, that Hogan was denied due process by the government's failure to provide an exculpatory document in time for Hogan's trial attorney to make effective use of it; second, that the district court erred in admitting the audio recordings; and, third, that the Court abused its discretion in allowing the government to use transcripts. The Sixth Circuit rejected each argument. Hogan apparently does not see the inconsistency in claiming that counsel's decision to challenge the admissibility of the tape recordings raised a "meritless" issue while at the same time raising it as a claim for relief in this § 2255 motion.

appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id*. at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). Id.

A certificate of appealability should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473 (2000).  Having examined each of petitioner's claims under the Slack standard, the Court finds that reasonable jurists could not find that the dismissal of his claims was debatable or wrong.  Therefore, the Court will DENY a certificate of appealibility.

A separate judgment will enter.

ENTER:


_____
s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE